[No. B138608. Second Dist., Div. Five. Aug. 1, 2001.]

CARMEN MORENO, Plaintiff and Respondent, v.
GREENWOOD AUTO CENTER, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I, II, the heading for part III, the indicated portions of part III(E), and IV are certified for publication.

**COUNSEL**

Manning, Leaver, Bruder & Berberich and Christian J. Scali for Defendant and Appellant.

Law Office of Lynn E. Moyer, Lynn E. Moyer; Law Office of Kent M. Bridwell and Kent M. Bridwell for Plaintiff an Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Greenwood Auto Center, appeals from portions of a judgment awarding damages and attorney fees to plaintiff, Carmen Moreno, in an action brought for fraud, conversion, and violation of the Vehicle Leasing Act (the act). (Civ. Code, § 2985.7 et seq.)[1] In the published portion of the opinion, we discuss whether prejudgment interest may be recovered in a conversion action where defendant was assessed damages for plaintiff's loss of use of her 1996 pickup truck and other financial losses. *No* damages were imposed for the value of the 1996 pickup truck at the time of the conversion. Given the express language in section 3287, subdivision (a), we conclude prejudgment interest can be recovered on the loss of use and other damages suffered by plaintiff.

## II. BACKGROUND

The complaint was originally filed in former municipal court on June 5, 1997. Plaintiff filed an amended complaint on July 30, 1997. On April 28, 1999, on plaintiff's motion, the matter was transferred to the superior court for trial. In the first amended complaint, plaintiff sought: damages and attorney fees for alleged violation of the act (first cause of action); rescission of contract (second cause of action); and damages for fraud and deceit in connection with the conversion of her 1996 truck (third cause of action). The first amended complaint alleged that plaintiff spoke only Spanish and did not read, write, speak, or understand English. On April 4, 1997, plaintiff went to

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

defendant's car dealership for the purpose of getting her 1996 truck serviced. While waiting in the service center, an "unknown agent" of defendant solicited plaintiff to trade in her 1996 truck for a new 1997 truck. Defendant's "unknown agent" told her that she would have payments that were similar to what she was already paying for the 1996 truck. She was paying approximately $350 a month for her 1996 truck.

Plaintiff was then turned over to a Spanish-speaking "salesman" who showed her a 1997 truck. The salesman told her that the accessories she had on her 1996 truck, including a $1,500 camper shell and $2,500 custom wheels would be installed on the new 1997 truck. He also told her that with the new truck she would have similar payments and a great tax advantage by signing a "lease." The word "lease" was used in English. However, the Spanish translation of the word "lease," "arrendamiento," was not used. On April 4, 1997, plaintiff entered into a written lease agreement under which defendant leased to her a 1997 GMC 1500 pickup truck for a term of 60 months. Plaintiff, however, believed when the lease was presented to her that she was signing a sales contract. Plaintiff was not informed and did not understand that she would be paying for five years and then would have a residual payment of more than $12,000 due at the end of 60 months. Plaintiff also believed that the $12,000 figure was the amount that was being allowed as credit for the trade-in of her 1996 truck. It was alleged defendant also failed to disclose, among other things, the amount or method for determining her liability at the end of the lease term. It was further alleged that the truck was leased primarily for personal purposes, which made the transaction subject to the act. Defendant's actions violated the act which entitled plaintiff to statutory damages, rescission of contract, attorney fees, and costs.

In the second cause of action for rescission, restitution and attorney fees, plaintiff alleged that she had been damaged by transferring title and possession of the 1996 truck to defendant. The 1996 truck was valued at approximately $17,000 as a down payment on the lease agreement. The April 4, 1997, agreement was never "executed" due to defendant's inability to obtain financing for the lease. Defendant falsely represented that its inability to obtain the financing was due to plaintiff's misrepresentations regarding her employment. Plaintiff owned her own business. Defendant has refused numerous requests by plaintiff to return the trade-in 1996 truck to plaintiff or to make restitution of approximately $17,000 to plaintiff.

In the third cause of action, plaintiff alleged that defendant intentionally or negligently misrepresented that she "could trade in her 1996 truck on a 1997 truck" with no money down and with approximately the same size monthly payment for a new 60-month period. Defendant also represented that it

would remove the custom features on the 1996 truck and put them on the 1997 GMC pickup. Defendant's representations were false in that it induced plaintiff to sign a lease agreement with a residual buyout of $12,000, without revealing this fact to plaintiff. Defendant then attempted to induce plaintiff to sign a purchase agreement with higher payments. The custom accessories on plaintiff's 1996 truck were not returned to her. Further, plaintiff's 1996 truck was not returned to her. At the time that plaintiff left her 1996 truck for a trade-in, she only owed a total payoff of $12,000. The new lease agreement obligated her for 60 payments of $492.72 per month plus a $12,213 residual payment, for a total of approximately $42,000. The terms of the agreement were not explained to her in Spanish. Plaintiff further alleged that she had been damaged by defendant's false representations as follows: she had been deprived "of the use of any vehicle since April 4, 1997"; she had incurred a legal obligation of almost $42,000; she was being billed by the California Department of Motor Vehicles for failure to "renew tags"; and she had incurred legal expenses. Among other things, plaintiff sought prejudgment interest.

Defendant filed a general denial and asserted as affirmative defenses plaintiff's breach of the contract and failure to state a cause of action. The matter proceeded to judicial arbitration which resulted in an award in favor of plaintiff. Defendant's de novo trial request was granted.

A jury trial began on September 7, 1999.[2] The trial was bifurcated on the issues of liability and punitive damages. Defendant stipulated that it violated the act by failing to give plaintiff a copy of the lease agreement in Spanish and to execute the contract. Defendant also stipulated that plaintiff was entitled to rescind the contract.

At the trial, plaintiff testified that she was born in Mexico and Spanish was her primary language. Although she lived in the United States for about 21 years, she has not learned to speak English with any fluency and knew only a few words. She owned a business that manufactured mattresses. On April 7, 1996, she purchased a 1996 pickup truck from defendant. The 1996 purchase was made pursuant to a contract that was negotiated in Spanish. Defendant also provided her with a copy of the sales contract, which was in Spanish. She put $15,000 down on the truck and her payments were $334.39 per month. By April 4, 1997, plaintiff had made 11 payments, all of which were timely. As of April 4, 1997, the truck had been driven 24,220 miles. Plaintiff accumulated much of the mileage by driving to work and on trips to

---

[2]Prior to the trial, the court granted plaintiff leave to amend the complaint to add causes of action for negligent and intentional infliction of emotional distress. However, at the conclusion of the trial, the court granted a directed verdict on both the emotional distress claims.

Mexico and Texas. Plaintiff did not otherwise use the 1996 truck in her business affairs.

On April 4, 1997, plaintiff went to defendant's service area for an oil change on her 1996 truck. A salesperson, Gaspar Sanchez, who spoke Spanish, approached plaintiff and persuaded her to trade in her 1996 pickup for a new 1997 truck. The lease was negotiated by Al Zaragoza. According to Bruce Frederick, a vice-president of defendant, Mr. Zaragoza was employed as a manager of finance. Mr. Zaragoza spoke only in Spanish to plaintiff. Mr. Zaragoza gave plaintiff papers to sign which were in English. One of the documents was purportedly a lease. Plaintiff thought the effect of the document was to allow her to purchase the 1997 pickup. Mr. Zaragoza did not tell her she was signing a lease. He told her she was signing a personal contract and "buying a truck." He told her the payments for the 1997 truck would be about the same as they were for the 1996 pickup.

As part of the transaction, plaintiff traded in her 1996 pickup. In 1996, she had agreed to pay $1,200 for a service contract on the 1996 truck. The service contract was still in effect on April 4, 1997. She had purchased over $4,000 in accessories for the 1996 truck. She was assured that the service contract and accessories would be transferred and added to her new 1997 pickup. The accessories were to be available "in about two or three days . . . ." After signing what she believed was a purchase agreement, plaintiff drove away in the new 1997 truck. About three days later, she called Mr. Zaragoza a number of times about picking up the accessories. In one telephone call, Mr. Zaragoza asked her to sign a "new contract." Umbaldo Polo, who was defendant's general manager, telephoned plaintiff and asked her to sign a new contract. Plaintiff refused to do so but made an appointment to see Mr. Zaragoza. Sometime around April 30, plaintiff met Mr. Zaragoza at defendant's dealership. During this meeting, Mr. Zaragoza told plaintiff that she had signed a lease for the 1997 truck. Mr. Zaragoza stated plaintiff would have to pay a residual of $12,213 at the end of the lease term. Plaintiff refused to sign the document proffered by Mr. Zaragoza and asked that her 1996 truck be returned. Mr. Zaragoza said, if plaintiff did not sign the new agreement, they would take both the 1996 and the 1997 trucks. Mr. Zaragoza stated, ' "[I]f you don't sign a new contract, we are going to take both trucks away.' "

Someone telephoned plaintiff's place of business. Plaintiff's sister-in-law, Graciela Castone, answered the telephone. The person did not identify himself but asked if plaintiff worked there. Ms. Castone stated that plaintiff did not work there. This was because plaintiff owned the business and did not merely "work" there.

Sometime after that, Mr. Polo telephoned plaintiff. Mr. Polo accused plaintiff of being a "liar." He apparently believed that Ms. Castone, who had initially answered the telephone, was plaintiff. Mr. Polo said: "I taped you. I just called and you were there." Plaintiff responded: "I was not here. I am here now, and I am answering you." Plaintiff told Mr. Polo that she owned the mattress factory and worked there also. She never told any employee of defendant's that she did not work at or own the mattress factory.

Plaintiff put the new truck in her garage so that it would not accumulate any more mileage. On or about May 2, 1997, although plaintiff had not failed to make any payments under the terms of the April 4, 1997, contract, defendant repossessed the 1997 truck. The truck was repossessed at 5 a.m. Plaintiff pulled the truck out of her garage and gave the keys to a man who told her that defendant would return her 1996 pickup. However, when plaintiff, accompanied by a daughter, went to defendant's dealership later that day, the 1996 truck was not returned. Mr. Zaragoza told plaintiff that he had orders from the owner not to return either pickup to her. At that time, plaintiff owed no money to defendant.

Bruce Frederick, defendant's vice-president and the chief financial officer, testified he gave the final ratification of the "lease" before it was sent to the finance institutions. A salesperson or finance officer did not need Mr. Frederick's approval to sign a lease binding defendant. A salesperson or finance officer had the authority to negotiate the terms of the lease with the customer. In April 1997, Mr. Zaragoza was a finance manager. Mr. Zaragoza dealt with Spanish-speaking customers. Mr. Frederick knew that the law required that contracts be provided in Spanish for such customers. Mr. Frederick also knew the definition of contract included a lease. The document signed by plaintiff on April 4, 1997, was a conditional sales purchase, not a lease. Defendant used the conditional sales purchase document to "lease" the 1997 truck.

Plaintiff hired an attorney who wrote a letter of rescission to defendant. The rescission letter stated that plaintiff had not negotiated a lease but the purchase of a 1997 truck. Mr. Frederick testified that he received the letter and gave it to Mr. Polo and defendant's attorney. Defendant did not return plaintiff's 1996 pickup or otherwise compensate her. Defendant never returned the accessories on the 1996 truck to her. Mr. Frederick admitted that at the time plaintiff demanded the return of the 1996 pickup, defendant had the ability to do so. Defendant had paid off plaintiff's loan from Union Bank on the 1996 truck on May 19, 1997, which was two weeks after defendant received plaintiff's notice of rescission.

On June 15, 1997, defendant sold the 1996 pickup to a third party for $22,652.50. However, defendant subsequently received a notice from the DMV (Department of Motor Vehicles) that registration fees were due. This was because plaintiff had, on Mr. Zaragoza's advice, stopped payment on a check to pay the registration on the 1996 pickup. Plaintiff had mailed the check prior to going to defendant's dealership to have her 1996 truck serviced on April 4, 1997. The registration fees were for April 30, 1997, through April 30, 1998. In October 1997, after the DMV notified defendant that the registration fees were due, Mr. Frederick authorized the filing of a small claims action against plaintiff to collect the past due fees and penalties. Plaintiff paid the judgment that was entered against her in the small claims action. In other words, plaintiff had to pay defendant the registration fee for a time period during which she *never* had possession of the 1996 truck.

By special verdict, the jury found that defendant was liable to plaintiff for $4,567.87 for conversion of accessories on the 1996 truck. The jury also found defendant liable to plaintiff for $18,854 for loss of use of the 1996 truck and accessories. The jury was also instructed that the value of the 1996 converted truck was $8,585.68. But as will be noted, the jury never assessed damages based on the value of the 1996 pickup at the time of the conversion. In the punitive damage portion of the trial, the jury found plaintiff was entitled to $62,143.70.

Plaintiff sought costs in the amount of $44,266.74, including $38,962 in attorney fees. Defendant filed a motion to tax costs in which it objected to $19,443.50 in attorney fees for the trial. Defendant claimed the fees were not recoverable for the claims pursued at trial because plaintiff elected to sue for and recover tort damages rather than proceeding under the act. The trial court denied the motion to tax costs regarding the attorney fees.

On December 7, 1999, defendant filed a new trial motion on various grounds including that the award for loss of use and related conversion damages was excessive. Plaintiff opposed the new trial motion. On December 22, 1999, the trial court granted the new trial motion solely on the issue of loss of use damages for conversion unless plaintiff accepted a remittitur in the amount of $12,600.

On January 13, 2000, the trial court entered judgment in favor of plaintiff. On January 18, 2000, defendant filed a notice of appeal. On January 26, 2000, defendant filed a motion to amend the judgment to reflect the trial court's rulings on the remittitur and prejudgment interest issues. On February 15, 2000, the trial court issued an amended judgment which reflected the remittitur for loss of use and other damages of $12,600 and that plaintiff had been awarded her attorney fees plus prejudgment interest.

## III. Discussion

. . . . . . . . . . . . . . . . . . . . . . . . . . .*

██ Defendant contends plaintiff may not receive prejudgment interest on her loss of use claim. Citing *Lint v. Chisholm* (1981) 121 Cal.App.3d 615, 624-625 [177 Cal.Rptr. 314], defendant argues: "[I]t is clear from the jury verdict, awarding loss of use damages on plaintiff's conversion claim, that plaintiff has already been compensated for prejudgment interest, and, and in accepting that award, has elected the tort remedy. 'In the absence of special circumstances the appropriate measure of damages for conversion of personal property is the fair market value of that property plus interest from the date of conversion, the standard first listed in [section 3336]. However, where proof establishes an injury beyond that which would be adequately compensated by the value of the property and interest, the court may award such amounts as will indemnify for all proximate reasonable loss caused by the wrongful act. [Citation.] Where damages for loss of use exceed the legal rate of interest, it is appropriate to award the former, but not both.' "

Defendant's argument as applied to this case is without merit. ██ The measure of damages for conversion is set forth in section 3336 which states in its entirety: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property." The damage measures set forth in the first paragraph of section 3336 are in the alternative. The first alternative is to compensate for the value of the property at the time of conversion with interest from the time of the taking. The second alternative is compensation in a sum equal to the amount of loss legally caused by the conversion and which could have been avoided with a proper degree of prudence. (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 215 [193 Cal.Rptr. 322]; *Myers v. Stephens* (1965) 233 Cal.App.2d 104, 116 [43 Cal.Rptr. 420].) Both of these alternatives are in addition to the damage element for the time spent pursuing the converted property set forth in the second paragraph of section 3336.

██ The jury was instructed on both alternative damage theories. The jury was instructed in the language of section 3336 as follows: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the

*See footnote, *ante*, page 201.

conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property." Despite the fact that both alternatives were submitted to the jury, the only special verdict on the damage issue asked this question, "What amount of damages did plaintiff suffer, if any, for the loss of use of her 1996 [pickup] truck and accessories?" In other words, the sole issue presented to the jury related to the "loss of use" of the 1996 pickup truck. The jury was never asked to determine the value of the 1996 pickup at the time of the conversion. The jury awarded plaintiff $18,854 for loss of use of her pickup truck. As noted previously, in response to the new trial motion, the court reduced the amount of loss of use damages. The trial court stated: "A motion for new trial on loss of use only is granted unless the plaintiff accepts a remittitur of $12,600. That is loss of use plus the small claims judgment of $4,254 allowed by the court." The conversion damages were not for the value of the 1996 pickup truck; the first alternative in section 3336. Rather, the damages were for loss of use and the $4,254 small claims judgment which falls under the second alternative in the first paragraph of section 3336.

The issue then is whether prejudgment interest may be recovered for loss of use and other damages in a conversion action. We conclude prejudgment interest may be recovered under these circumstances. The pertinent language is in section 3287, subdivision (a), which states, "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled also to recover interest thereon from that day." Defendant raises no questions as to whether the damages were capable of being made certain by calculation and the right to recover vested on a particular day. Defendant does not dispute that these elements of section 3287, subdivision (a) were satisfied. Rather, defendant's *sole* contention is that conversion damages for loss of use and the small claims judgment under the second alternative in the first paragraph of section 3336 are never subject to prejudgment interest. In this case, where the only basis for the damage award was the second alternative in the first paragraph of section 3336, the express language of section 3287, subdivision (a) can allow for the awarding of prejudgment interest.

We recognize the decision relied upon by defendant, *Lint v. Chisholm*, *supra*, 121 Cal.App.3d at page 625, holds: "Where damages for loss of use exceed the legal rate of interest, it is appropriate to award the former, but not

both. [Citation.]" However, the express language of section 3287, subdivision (a) permits the recovery of prejudgment interest under specified circumstances. Defendant does not quarrel with the trial court's implied finding that those specified circumstances in section 3287, subdivision (a) are present in this case. There is no evidence of an inequitable double recovery in this case or other injustice. This is not a case where a plaintiff has received an award of interest under the initial alternative in the first paragraph of section 3336. Such a scenario could posit issues of an inappropriate double recovery. Rather, in this case, plaintiff was compensated for damages under the second alternative in the first paragraph of section 3336 which does not include an element of interest. Hence, given the express language of section 3287, subdivision (a), we respectfully disagree with *Lint* and affirm the award of prejudgment interest in this case.

## IV.  DISPOSITION

The judgment is affirmed. Plaintiff, Carmen Moreno, is entitled to costs on appeal including attorney fees from defendant, Greenwood Auto Center.

Armstrong, J., and Willhite, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.